# UNITED STATES DISTRICT COURT
for the
Eastern District of Tennessee



FILED
SEP 13 2019
Clerk, U. S. District Court
Eastern District of Tennessee
at Knoxville

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
)   Case No. 3:19-MJ-2117
Apple iPhone, SN#TF256PSIMV9N seized from Ms. Esther )
Pridemore, currently located at Dandridge Police Department )
evidence room at 267 West Highway 25/70, Dandrige, TN 37725 )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

an Apple iPhone, SN#TF256PSIMV9N seized from Ms. Esther Pridemore, currently located at Dandridge Police Department evidence room at 267 West Highway 25/70, Dandrige, TN 37725, as more fully described in Attachment A.

located in the ____Eastern____ District of ____Tennessee____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a), 841(b)(1)(A) and 846 | Possession with Intent to Distribute 50 grams or more of ice methamphetamine; Conspiracy to possess with intent to distribute 50 grams or more of ice methamph. |

The application is based on these facts:

Please see the Affidavit of FBI TFO David Norton which is attached hereto and incorporated herein.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____David Norton_____
*Applicant's signature*

David Norton, FBI Task Force Officer
*Printed name and title*

Sworn to before me and signed in my presence.

Date: ____08/19/2019____

_____Bruce Guyton_____
*Judge's signature*

City and state: Knoxville, Tennessee

H. Bruce Guyton, United States Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR _____



FILED
SEP 1 3 2019
Clerk, U. S. District Court
Eastern District of Tennessee
At Knoxville

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF Apple I Phone, CURRENTLY LOCATED AT Dandridge Police evidence room at 267 West Highway 25/70, Dandridge TN 37725 | Case No. 3:19-MJ-2117 |

## AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE

I, David Norton, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—an electronic device—which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

I am a **Task Force Officer** (TFO) with the **FBI**, and have been since **February of 2017**. Your affiant has worked in the field of law enforcement for over twenty years.

I was employed by Gatlinburg Police Department from 1995 to 2009. I was assigned to the Drug Task force from Gatlinburg Police Department from 2007 to 2009. In 2009 I took a full time Agent position at the Drug Task force. In 2017 I became employed as a Deputy Sheriff with the Jefferson County Sheriff's Department. I am currently a Detective Sergeant at the Jefferson County Sheriff's Department and I am assigned to the 4th Drug Task Force (DTF) and to FBI HIDTA.

During my employment as a Police Officer, DTF Agent, Deputy Sheriff, and

FBI TFO, I have attended and completed various training schools and seminars dealing with drug investigative techniques. I have conducted or participated in thousands of investigations involving the distribution of narcotics in east Tennessee, which have been prosecuted in state court and Federal Court.

On hundreds of occasions, I have acted in an undercover capacity to purchase narcotics from individuals trafficking in methamphetamine, prescription pills, marijuana, cocaine, and other Controlled Substances in violation of the Drug Control Act of the State of Tennessee.

2. I have executed and participated in the execution of a number of search warrants resulting in the seizure of illegal narcotics, financial records, documents indicating the accumulation, concealment, and utilization of proceeds along with actual monetary, other tangible assets and proceeds of illegal drug activity. I have participated in wiretap investigations, conducted surveillance of drug transactions, seized evidence, arrested suspects, interviewed suspects related to drug activity, interviewed confidential informants related to drug activity and conferred with prosecutors and other law enforcement officers in my community regarding narcotics investigations and, as a result, have gained considerable experience.

3. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

4. The property to be searched is an Apple iPhone, serial number TF256PSIMV9N, hereinafter the "Device." The Device is currently located at Dandridge Police evidence room at 267 West Highway 25/70, Dandridge TN 37725.

5.     The applied-for warrant would authorize the forensic examination of the Device for the purpose of identifying electronically stored data particularly described in Attachment B.

## PROBABLE CAUSE

6.     On October 3, 2018 Ester Pridemore was observed driving a red Pontiac. The vehicle was weaving inside the lane as it traveled down the road. A Bledsoe County Sheriff's Deputy followed the vehicle and observed the vehicle make a sudden swerve almost running off the roadway. The deputy then observe the vehicle jerk back to the left crossing the center line. The vehicle was traffic stopped by the deputy. Esther Pridemore could not produce a valid driver's license, and she told the deputy her license were no good. A check of the driving status of Esther Pridemore showed her driver's license status to be revoked. The deputy asked Pridemore to exit the vehicle. As Pridemore exited the vehicle, she attempted to take a Wiegel's shopping bag with her. The deputy instructed Pridemore to leave the bag in the vehicle. Esther Pridemore was arrested by the Deputy and taken into custody due to driving on a revoked or suspend driver's license. A search was conducted incident to arrest and an inventory of the vehicle prior to the vehicle being towed. During this time the Weigels bag was found to contain a makeup bag that contained approximately 12.27 grams of ice methamphetamine, digital scales, two syringes, several small baggies, a spoon, a torch, an ink pen made into a straw, and a pill crusher. Pridemore was also in possession of an Apple iPhone. Pridemore also gave the deputy the pass code to unlock the Apple iPhone.

7.     The Device is currently in the lawful possession of the Dandridge Police Department. It came into the Dandridge Police Department's possession in the following way: Detective Kenneth Lodwick of the Dandridge Police Department learned that Esther Pridemore

3

had been arrested by the Bledsoe County Sheriff's Department for possession of methamphetamine for resale. Detective Lodwick contacted the Bledsoe County Sheriff's Department about adopting the case to be included into an ongoing federal case. Bledsoe County Sheriff's Department agreed to turn over the case reports and evidence to Detective Lodwick. Included in the evidence turned over to Detective Lodwick was an Apple iPhone that had been seized as evidence from Esther Pridemore at the time of her arrest. Therefore, while the Dandridge Police Department might already have all necessary authority to examine the Device, I seek this additional warrant out of an abundance of caution to be certain that an examination of the Device will comply with the Fourth Amendment and other applicable laws.

8. The Device is currently in storage at Dandridge Police Department 267 West Highway 25/70 Dandridge TN 37725. In my training and experience, I know that the Device has been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the Device first came into the possession of the Dandridge Police Department.

9. Based on my training and experience, individuals that deal in illegal drugs often use phones to arrange illegal drug sales; using voice calls, text messages and social media. Individuals often take photographs of evidence of illegal drugs and illegal activity. Esther Pridemore's phone should contain contact information of her drug suppliers, contact information of her drug customers, call logs of coconspirators, text messages arranging illegal drug sales, and photographs of illegal activity and evidence of crimes.

4

## **TECHNICAL TERMS**

10. Based on my training and experience, I use the following technical terms to convey the following meanings:

    a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

    b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by

5

connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special

6

sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e. PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

f. Tablet: A tablet is a mobile computer, typically larger than a phone yet smaller than a notebook, that is primarily operated by touching the screen. Tablets function as wireless communication devices and can be used to access the Internet through cellular networks, 802.11 "wi-fi" networks, or otherwise. Tablets typically contain programs called apps, which, like programs on a personal

7

computer, perform different functions and save data associated with those functions. Apps can, for example, permit accessing the Web, sending and receiving e-mail, and participating in Internet social networks.

g. Pager: A pager is a handheld wireless electronic device used to contact an individual through an alert, or a numeric or text message sent over a telecommunications network. Some pagers enable the user to send, as well as receive, text messages.

h. IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

i. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

8

11. Based on my training, experience, and research, I know that the Device has capabilities that allow it to serve as **a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA.** In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

12. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

13. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Device because:

   a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

9

b. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

c. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

d. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

14. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

15. *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

16. I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Device described in Attachment A to seek the items described in Attachment B.

Respectfully submitted,

*David Norton*
David Norton
Task Force Office
FBI

Subscribed and sworn to before me
on August 19, 2019:

*Bruce Guyton*
H. BRUCE GUYTON
UNITED STATES MAGISTRATE JUDGE

11

# ATTACHMENT A

17. The property to be searched is an Apple iPhone, serial number TF256PSIMV9N, hereinafter the "Device." The Device is currently located at Dandridge Police evidence room at 267 West Highway 25/70, Dandridge TN 37725.

This warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment B.

# ATTACHMENT B

1. All records from the property described in Attachment A that relate to violations of Title 21, United States Code, Sections 841(a)(1) and 846 as follows:

   a. All communications between October 3, 2018 and August 19, 2019, in whatever form, that relate to, further in any way, or constitute evidence of drug trafficking, including all records related to those communications.

   b. All photographs, videos, audio recordings, and text messages, between October 3, 2018 and August 19, 2019, that relate to, further in any way, or constitute evidence of drug trafficking.

   c. All data, communications, information, and records, in whatever form, between October 3, 2018 and August 19, 2019, that have any tendency to establish the physical location of the particular property, i.e. the iPhone, described in Attachment A.

   d. All data, communications, information, and records, in whatever form, October 3, 2018 and August 19, 2019, that establish the identity or location of individuals engaged in drug trafficking.

2. Evidence of user attribution showing who used or owned the particular property, i.e. the iPhone described in Attached A at the time the electronically stored evidence described in this warrant was created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored.

3. This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.